[Crim. No. 1433. Fourth Dist. Dec. 17, 1959.]

THE PEOPLE, Respondent, v. JACK SILVER, Appellant.

Edgar G. Langford and J. Perry Langford for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

MUSSELL, J.—By indictment, appellant was accused of the crime of attempted murder (Pen. Code, §§ 664, 187) and, in a second count, he was accused of the crime of possession of a narcotic in violation of section 11500 of the Health and Safety Code. A jury returned a verdict finding him guilty of possessing a narcotic but was unable to reach a verdict on the attempted murder charge. Appellant was granted probation on certain conditions, including confinement in the Adult Detention Facility of the County of San Diego for a period of 60 days and payment of a fine in the sum of $250. He appeals from the judgment and order granting him probation, claiming that the trial court committed prejudicial error in instructing the jury and that the evidence was insufficient to support the verdict.

On January 12, 1959, during the course of a police interrogation of appellant in connection with their investigation of the attempted murder charge, he was asked if he objected to a search by the officers of a garage at 4041 Kansas Street. Appellant replied, "All right. That is my garage. I rent it." Appellant then gave the officers the key to the garage and they searched it, finding various items relating to the attempted murder charge. The next day officers met with appellant at this garage and he was again asked if he had any objection to a search. He stated that he had no objection and proceeded to the front entrance of the garage, removed from his pants pocket a key, opened the garage door and entered, followed by the officers. Appellant pointed out several cartons containing packages of various types of drugs and stated that they were drugs he had removed from his store (The Bayview Pharmacy) in 1954. An inventory was taken and appellant stated that there were no other drugs in the garage. Later the same day, the police asked if another search might be made and appellant gave the officers the key to the garage and in the course of this search a box was uncovered labeled as a "Johnson and Johnson First Aid Kit." Inside the kit was a small brown glass vial labeled "Dilaudid Hydrochloride, 1/16 grain" and containing 77 small white pills. The officer also found in the "kit" a small bag which contained six small boxes labeled "Solution of Morphine Tartrate." Each box contained a small container known as a "syrette." There was also found in the kit a small green bottle containing 29 nembutal, 1½ grain capsules, and 14 small two-tone capsules labeled "Tuinal," 1½ grains. One of the items marked "Dilaudid Hydrochloride" and various syrettes were tested

by a qualified expert, who testified that they contained, respectively, a narcotic, Dilaudid, a morphine derivative, and morphine.

Appellant testified at the trial that he was first licensed as a registered pharmacist in 1948 and has been a registered pharmacist each year continuously since that time; that at one time he owned a pharmacy, but sold it in 1954; that most of the stock was turned over to the buyer, but that he kept a selection of good stock to begin a new pharmacy; that he had a good selection of the most used drugs which he kept in a box in his garage, and it contained the various things that were found by the officers, along with many other drugs that are used in a pharmacy; that there were no narcotics in the garage outside of the kit, which he kept for emergency purposes and had never used; that after he sold his store in 1954 he prospected, built a helicopter, worked part-time in pharmacies, and at the time of his arrest was working in a Thrifty Drug Store; that a bottle of yellow tablets marked "percodan" was prescribed for his wife and he brought it over to her; that he did not obtain the narcotics by prescription and did not bring them home to use as a part of his pharmacy stock.

Appellant's position here is that the evidence will not support a conviction for the reason that, under the applicable statutes, a registered pharmacist cannot be guilty of the unlawful possession of narcotics which he has lawfully acquired.

Section 11500 of the Health and Safety Code prohibits the possession of narcotics except as otherwise provided in that division. Section 11570 of said code authorizes sale by pharmacists at retail without prescription to physicians, dentists, chiropodists and veterinarians, and section 11571 provides that no prescription is required in the case of sales to pharmacists. Division 10, chapter 3 of said code sets up rules and regulations for prescriptions, and it must be conceded that a pharmacist may lawfully possess narcotics in order to sell them. However, we find no statute authorizing the possession of narcotics by a pharmacist except for the purposes stated in the statute. The record shows that the appellant sold his pharmacy in 1954. The narcotics involved were not stored near a pharmacy and they had no relation to a pharmacy. They were not being kept or stored for further use in a pharmacy or kept for resale, and appel-·

lant admits that they were for his private use in case of emergency. Under these circumstances, appellant cannot successfully maintain that his possession of the involved narcotics was lawful. Therefore, we conclude that the evidence was sufficient to support the verdict of the jury.

■ Appellant asserts that the trial court erred in instructing the jury as follows:

"A person in lawful possession of one of the listed narcotics becomes a violator of the statute if the possession ceases to be lawful. A pharmacist, who while in lawful possession of narcotics as stock in his pharmacy, converts the narcotics from stock to his own use or purposes ceases to have lawful possession of the narcotics converted, and is in violation of the statute if the other requirements I have stated to you are satisfied."

We find no prejudicial error in the instruction. Appellant's dissatisfaction with it stems from the trial court's conclusion that a pharmacist cannot convert narcotics to his own use, a conclusion that is supported by the evidence herein and the statutes applicable.

Judgment and order granting probation affirmed.

Griffin, P. J., and Monroe, J. pro tem.*, concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 10, 1960.

---

*Assigned by Chairman of Judicial Council.